CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 16 2009

JOHN F. CORCORAN, CLERK
BY:
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BILLY LESTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 7:08cv407 |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) By: Michael F. Urbanski |
| Commissioner of Social Security, | ) United States Magistrate Judge |
| | ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

Plaintiff Billy Lester ("Lester") brought this action for review of the Commissioner of Social Security's ("Commissioner's") decision denying his claim for disability insurance benefits under the Social Security Act (the "Act"). On appeal, Lester principally argues that the Commissioner erred by failing to discuss all the limitations noted by Dr. Phillips, a state agency medical consultant, in determining Lester's residual functional capacity ("RFC"). Furthermore, Lester contends that because medical evidence received after the state agency review demonstrates that he is even more physically limited than found by Dr. Phillips, the ALJ should have ordered an additional medical evaluation. Having reviewed the record, the undersigned finds the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence and **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

I.

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d

171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the RFC,[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

Lester was born in 1955 (Administrative Record, hereinafter "R." 29), and at the time of the ALJ's decision was considered a "younger individual" under the Act. 20 C.F.R. § 416.963(b). He completed the seventh grade and has not obtained his GED. (R. 29.) His past

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. § 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. § 416.929(a).

relevant work includes being a sewing machine mechanic and construction laborer. (R. 30, 42.)

Lester filed an application for disability insurance benefits ("DIB") on October 17, 2006, claiming an onset date of August 1, 2004 due to back pain, arthritis in the lower back, leg pain, arthritis in the neck, pain in the arms, shoulder pain, and numbness in the hands. (R. 60, 78.) Pursuant to the regulations, Lester must prove he became disabled on or before his date last insured, December 31, 2007, in order to establish a DIB claim. 20 C.F.R. § 404.141. His application for benefits was rejected by the Commissioner initially and again upon reconsideration. An administrative hearing was convened before an ALJ on December 21, 2007. (R. 15.) In determining whether Lester was disabled under the Act, the ALJ found that he suffers from the following: degenerative disc disease, left shoulder problem, obesity, vertigo and left ulnar mononeuropathy, which are considered severe impairments pursuant to 20 C.F.R. § 416.1520(c). (R. 17.) However, the ALJ found that Lester does not have an impairment or combination of impairments that rises to listing-level severity. (R. 17.) The ALJ further determined that Lester retains the RFC to perform light work and can lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk up to six hours in an eight hour workday, and sit for up to six hours, with occasional climbing, balancing, kneeling, crawling, stooping, crouching, and overhead reaching with the left upper extremity. He cannot perform work using monitors. (R. 18.) The ALJ found that Lester could not perform his past relevant work, but there are jobs that exist in significant numbers in the national economy that he can perform. (R. 22-23.) As such, the ALJ concluded that Lester was not under a disability as defined in the Act. (R. 23.) The Appeals Council denied Lester's request for review, and this appeal followed. (R. 2-4.)

## III.

Lester's family practitioner, Dr. Harcus, began treating him for lower back pain in June 2004. (R. 201-203.) In September 2004, Lester was admitted to the emergency department at Franklin Memorial Hospital for vomiting and nausea, caused by vertigo. (R. 297-301.) Three days later he went to see Dr. Landau at Martinsville Otolarynology Associates, Inc. and was diagnosed with acute peripheral vestibulopathy in the compensatory phases. Dr. Landau explained the progression of the disease and told him to stay away from dangerous situations. Lester was instructed not to climb ladders or work in elevated situations. (R. 181-183.)

In September 2005, Lester returned to Dr. Harcus with pain in his right elbow and left shoulder. Dr. Harcus noted no acute injury, and diagnosed Lester with lateral epicondylitis, shoulder pain, and supraspinatus tendinitis. (R. 193-195.) In October 2005, Lester saw Dr. Mahoney at the Bone & Joint Center, again complaining of left shoulder and back pain. An MRI showed minimal degenerative disc disease and bulging of the disc at L5-S1. (R. 209-212.) Dr. Mahoney referred Lester to Dr. Bell for an epidural steriod injection for his lumbosacral back pain, which he received on October 12, 2005. Lester returned to Dr. Harcus on February 7, 2006 with marked improvement in his back pain, but noted little to no relief in his left shoulder. (R. 208.) A couple of days later Lester had an MRI of his left shoulder, and Dr. Mahoney explained that the left C4-C5 cervical disc was impinging and producing the left shoulder pain. (R. 207.)

In a follow-up examination in April 2006, Dr. Mahoney noted that there was evidence of a C4-C5 disc disease with radiculitis, a frozen left shoulder, and chronic degenerative disc disease in the lumbosacral spine. He referred him to physical therapy to increase the range of motion of his left shoulder and prescribed medication for pain relief. (R. 206.) Lester was

referred to Dr. Mann at the Roanoke Orthopaedic Center, who stated that Lester had an impingement syndrome of his left shoulder. Dr. Mann injected his shoulder with an anti-inflammatory medication and asked him to continue his rotator cuff strengthening exercise program. If his symptoms had not abated, Dr. Mann recommended arthroscopic subacromial decompression of his left shoulder. (R. 271-273.)

On September 28, 2006, Lester sought treatment from Dr. Aaron, an internist, for vertigo. Dr. Aaron prescribed medication for the vertigo and noted spasm in the right midthoracic musculature adjacent to the scapula and that his posture slumped to the right. (R. 266-267.) On January 5, 2007, Dr. Brent Johnson performed an arthroscopic subacromial decompression and arthroscopic distal clavulectomy, both on Lester's left shoulder. (R. 242-263.) At a follow-up visit, Lester reported that he had some improvement in his left shoulder, but still had pain. Dr. Johnson referred Lester to physical therapy for a home exercise program to work on stretching and strengthening. (R. 280.)

In December 2006, Dr. Frank Johnson, a state agency medical consultant, completed a physical RFC assessment form. Based on his review of Lester's medical records, Dr. Johnson concluded that Lester could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours in an eight hour day, and sit about six hours in an eight-hour day. Further, Lester could only climb, stoop, and crouch occasionally. (R. 234-241.) Dr. Phillips, also a state agency medical consultant, completed another RFC assessment form on March 20, 2007. He noted all the restrictions from Dr. Johnson's evaluation and added that Lester had a limited ability to push and/or pull in his upper extremities due to left shoulder degenerative joint disease, and limited ability to push and/or pull in the lower extremities due to

multi-level degenerative disc disease in the back. Additionally, Lester should only occasionally balance, kneel, and crawl. He also said that Lester is limited in his ability to reach overhead with his left arm and Lester should avoid concentrated exposure to hazards such as machinery and heights. (R 283-290.)

On June 26, 2007, Lester had an MRI scan performed, which showed disc protrusion/herniation at the C4-5 level to the left, causing nerve root compression. Dr. Harron performed an anterior cervical diskectomy and fusion at C4-5. (R. 311-315.) After the surgery, Lester was prescribed physical therapy for the neck and upper extremities two to three times per week for six weeks. (R. 340.) In October 2007, Dr. Scherer performed a nerve conduction and electromyography study, and concluded that there was evidence of a left ulnar mononeuropathy at the elbow in addition to borderline sensory amplitudes in both upper extremities. (R. 352-354.)

## IV.

Plaintiff contends that the ALJ's decision that Lester was not under a disability was not supported by substantial evidence because the ALJ improperly formulated the RFC determination. The RFC determination was based on two opinions by state agency physicians, Dr. Johnson and Dr. Phillips. Lester asserts that Dr. Johnson's opinion is consistent with the ALJ's RFC determination, but that Dr. Johnson did not have access to a significant amount of medical evidence. Lester also argues that the ALJ failed to include all the limitations noted by Dr. Phillips in the RFC determination. In particular, Lester complains that the RFC set forth in the ALJ's decision does not include the restriction on pulling and pushing in his upper and lower extremities and avoidance of heights and machinery noted by Dr. Phillips. Furthermore, Lester

contends that medical procedures, evidence, and testimony made available after Dr. Phillips' examination demonstrate that Lester is actually more physically limited than noted at the time of his appointment with Dr. Phillips.² Because of this additional evidence, Lester argues that the ALJ should have ordered another medical evaluation.

With regard to Lester's first argument, the undersigned finds that the ALJ properly considered the state agency medical consultants' evaluations in determining Lester's RFC. To be sure, the ALJ did not note the pushing and pulling and hazard avoidance restrictions in the RFC set forth in the decision, but these restrictions were addressed by the ALJ at the administrative hearing and were included in the hypothetical questions posed to the Vocational Expert ("VE"). As such, the ALJ's conclusion is supported by substantial evidence.

Dr. Phillips noted the following limitations: Lester can occasionally lift and/or carry up to twenty pounds, frequently lift and/or carry up to ten pounds, stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. His ability to push and/or pull is limited in the upper extremities due to left shoulder degenerative joint disease and limited in the lower extremities due to multi-level degenerative disc disease in the back. Further, Dr. Phillips said that Lester can only occasionally climb ramps and stairs, and should never climb ladders, ropes, or scaffolds. He can only occasionally balance, stoop, kneel, crouch, and crawl. Lester is also limited in his ability to reach in the left overhead area, and should avoid concentrated exposure to hazards such as machinery and heights. (R. 283-290.) In the decision following the hearing, the ALJ held that:

[T]he claimaint has the residual functional capacity to perform light work, i.e., lift/carry

---

² Although this medical evidence was not available at the time of Dr. Phillips' opinion, it occurred before the date of the administrative hearing.

no more than 20 pounds occasionally, 10 pounds frequently, stand/walk no more than 6 hours in an 8-hour day, sit for no more than 6 hours in an 8-hour day, with occasional climbing, balancing, kneeling, crawling, stopping, crouching and overhead reaching with the left upper extremity; and no work using monitors. (R. 18.)

Lester is correct that the ALJ's decision does not reflect Lester's limited ability to push and/or pull in his upper and lower extremities. Further, the RFC does not state that Lester can never climb ladders, ropes, or scaffolds and should avoid concentrated exposure to hazards. Although the RFC determination does not follow Dr. Phillips' assessment word-for-word, the ALJ considered these additional factors when posing hypothetical questions to the VE at the administrative hearing. At the hearing, the ALJ provided the VE with a series of hypotheticals. The first hypothetical was as follows:

> Assume an individual such as the Claimant who retains the residual functional capacity to perform work that requires the following: lifting and carrying 20 pounds occasionally, 10 pounds frequently, standing and walking 6 hours in an 8-hour day, sitting for 6 hours in an 8-hour day, pushing and pulling is limited in the lower extremities and the upper extremities to the lift-carry amount, occasional climbing, balancing, kneeling, crawling, stooping, crouching, occasional reaching overhead with the left upper extremity. Further assume this hypothetical individual is restricted to work that does not require working around hazardous machinery at unprotected heights, climbing ladders, ropes and scaffolds, or working on vibrating surfaces in work that does not expose the worker to extreme temperature changes, and does not involve the use of monitors. Would such a person be able to perform the Claimant's past work as he actually performed it or as it is customarily performed in the national economy?

(R. 43.) The VE responded that such a person could not perform claimant's past work as he actually performed it or as it is customarily performed in the national economy. Id. In hypothetical number two, the ALJ added that the claimant was a younger person with a seventh grade education, and asked if the individual could perform other jobs in the national or regional economy. The VE suggested several occupations, including an assembler, packer, or order filler. (R. 43-44.) In hypothetical number three, the ALJ added to the physical limitations already noted

that the individual is limited to occasional handling with the left non-dominant hand. (R. 44.) The VE responded that this individual could not perform the claimant's past work. Finally, in hypothetical number four, the ALJ asked, given all these physical limitations and the claimant's education and work experience, if there are any jobs in the national or regional economy that such a person could perform. The VE noted that the previous jobs suggested require good use of both upper extremities, so with occasional handling with the left non-dominant hand the individual could perform in-person service occupations like a cashier, amusement or recreation attendant, or transportation attendant. (R. 44-45.) Because the VE considered all of the limitations noted by Dr. Phillips in the hypotheticals provided by the ALJ and concluded that a significant number of jobs exist in the regional and national economy, it would serve no practical purpose to remand this case to correct the RFC reflected in the ALJ's decision.

Plainly, the limitation on pushing/pulling and prohibition on climbing ladders, ropes, scaffolds and other exposures to hazards were considered by the ALJ and VE. While the ALJ's failure to mention these limitations as part of the RFC in the decision is error, this error is harmless as it does not affect the substantive outcome of this case. Errors are harmless in social security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error. Camp v. Massanari, 22 F. App'x 311 (4th Cir. 2001) (citing Newton v. Appel, 209 F.3d 448, 458 (5th Cir. 2000)). Plainly, the ALJ considered the limitations missing in the decision's final iteration of the RFC and addressed those with the VE, who concluded that jobs were available. This testimony by the VE constitutes substantial evidence supporting the ALJ's finding that Lester is not disabled, and a remand to correct the lacuna in the RFC reflected in the decision would serve no substantive purpose. For this reason,
-10-

the undersigned cannot conclude that the ALJ's ultimate decision was not supported by substantial evidence.

The undersigned further finds that it was not necessary for the ALJ to order an additional medical evaluation, as the medical procedures, evidence, and testimony uncovered after Dr. Phillips' examination were not likely to change the findings of Dr. Phillips' Functional Capacity Assessment. First, Lester points to the anterior cervical diskectomy and fusion at the C4-5 level. Lester provides no evidence that the surgery indicates a greater level of physical limitation or worsened his physical condition. In fact, the medical records reflect that the C4-5 surgery improved Lester's condition. (R. 280.) Morever, Dr. Phillips was aware of Lester's cervical problems. (R. 289.) The physical problems addressed by the anterior cervical diskectomy and fusion were in the record prior to the examination by Dr. Phillips, and thus provide no new significant medical evidence which warrants overturning the ALJ's determination. (R. 206-207).

Second, Lester received physical therapy from February 23, 2007 to September 6, 2007 due to left shoulder subacromial impingement, left rotator cuff syndrome, left rotator cuff tear, decreased left shoulder strength, decreased left shoulder range of motion, pain with functional use of the left upper extremity, left shoulder pain, severe muscle spasms, neck pain, and left extremity paresthesias. Most of the ailments treated in physical therapy existed prior to Dr. Phillips' examination.[3] The only issue not mentioned before Dr. Phillips' examination that was addressed in physical therapy is the rotator cuff syndrome. (R. 329.) Nevertheless, plaintiff provides no

---

[3] In a 2004 visit with Dr. Harcus he noted paresthesias. In a later visit to Dr. Harcus in 2005 he complained of left shoulder pain. (R. 193.) On February 7, 2006, Dr. Mahoney notes that Lester has limited range of motion of the shoulder. (R. 208.) On February 16, 2006, Dr. Mahoney notes left shoulder pain due to impingement. (R. 207.) Upon referral by Dr. Mahoney, Lester saw Dr. Bell on February 24, 2006, and Dr. Bell noted that he was having pain in his neck. (R. 184.) At another visit to Dr. Mahoney, it was noted that he experienced a muscle spasm. Lester's pain associated with the use of the left upper extremity has already been accounted for in hypothetical number one provided to the VE.

-11-

argument or evidence that this alone called for an additional medical evaluation.

Third, plaintiff points to a nerve conduction and electromyography study performed on October 19, 2007, which revealed evidence of a left ulnar mononeuropathy at the elbow. (R. 352-354). This also does not upset the findings made by the ALJ because the results of the EMG were accounted for in the ALJ's hypothetical number three when it was stipulated that there would only be occasional handling with the left non-dominant hand.

Finally, plaintiff asserts that his own testimony that he has bilateral arm problems, with his left worse than his right, that he can lift no more than five to ten pounds with his left arm, that he has little use of his arms, and that he drops things establishes physical impairments greater than those known to Dr. Phillips at the time of his examination. The ALJ considered plaintiff's testimony in hypotheticals five and six. In hypothetical number five, the ALJ added to the previous hypothetical the plaintiff's testimony, in particular his statements that he can only stand for thirty to forty minutes at a time, sit for thirty to forty minutes at a time, and can only lift five pounds. The VE responded that the individual could not perform claimant's past work or other jobs in the national or regional economy. (R. 45.) The ALJ found in the decision denying benefits that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 22.)

In light of conflicting evidence contained in the record, it is the duty of the ALJ to fact-find and to resolve any inconsistencies between a claimant's alleged symptoms and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Accordingly, the ALJ is not required to accept Lester's subjective allegation that he is disabled by pain, but rather must determine, through an examination of the objective medical record, whether he has proven an

-12-

Case 7:08-cv-00407-SGW-mfu   Document 17   Filed 07/16/09   Page 12 of 15   Pageid#: 77

underlying impairment that could reasonably be expected to produce the symptoms alleged. Craig v. Chater, 76 F.3d 585, 592-93 (4th Cir. 1996) (stating the objective medical evidence must corroborate "not just pain, or some pain, or pain of some kind or severity, but the pain the claimant alleges she suffers."). Then, the ALJ must determine whether Lester's statements about his symptoms are credible in light of the entire record. Credibility determinations are in the province of the ALJ, and courts normally ought not interfere with those determinations. See Hatcher v. Sec'y of Health & Human Servs., 898 F. 2d 21, 23 (4th Cir. 1989).

After carefully reviewing the entire record, there is no reason to disturb the ALJ's credibility determination. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The claimant's testimony that he could lift no more than five to ten pounds with his left arm, and that he can only stand thirty to forty minutes at a time and sit thirty to forty minutes at a time contradicts the limitations noted by Dr. Johnson and Dr. Phillips. Further, Lester provides no medical evidence or testimony, beyond his own, supporting these contentions. The ALJ was correct to find that, while the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

## V.

At the end of the day, it is not the province of the reviewing court to make a disability determination. It is the court's role to determine whether the Commissioner's decision is

-13-

supported by substantial evidence, and, in this case, substantial evidence supports the ALJ's opinion. In recommending that the final decision of the Commissioner be affirmed, the court does not suggest that Lester is totally free of any distress. The objective medical record simply fails to document the existence of any physical and/or mental conditions which would reasonably be expected to result in total disability from all forms of substantial gainful employment. The record in this case does not contain any medical opinions stating that Lester is disabled. The ALJ properly framed hypothetical questions to a VE reflecting all of Lester's impairments, and the VE concluded that there were jobs Lester could perform in the national economy. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Lester's claim for benefits and in determining that his physical impairments would not prevent him from performing any work. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Accordingly, the undersigned concludes that the Commissioner's decision must be affirmed and the defendant's motion for summary judgment **GRANTED.**

The Clerk is directed to transmit the record in this case to Samuel G. Wilson, United States District Judge and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as

-14-

Case 7:08-cv-00407-SGW-mfu   Document 17   Filed 07/16/09   Page 14 of 15   Pageid#: 79

a waiver of such objection.

Enter this 16th day of July, 2009.

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge